May it please the Court, Henry Mascia, Attorney for the Plaintiff's Appellants, Kavasutra. Kavasutra sought a preliminary injunction to stop the City from misclassifying my client's namesake product, kava, as a food additive when it's mixed with water. When the District Court denied that motion, it made three errors. On the merits, the District Court found that we did not establish a likelihood of success on the merits, and that was error. Congress passed the motion anyway. Can the District Court tell us why it didn't think, I mean, it strikes me there was a, there were, was the primary focus this threshold question of whether the kava qualifies as a food or as an additive because you add it to water and it changes things, or was the primary focus the safety, assuming it's an additive, is it sort of accepted as a generally recognized as a safe? Yeah, I think the District Court may have muddled that and didn't decide the threshold question that's dispositive and focused in on the safety issue and seemed to think that a trial was needed. What makes you say that? I didn't, I mean, the Court recited both issues and then it said I find this a close case. Your brief suggests that the Court was speaking with the Equipoise remark specifically about the safety conclusion. I didn't, I didn't see that. I'm wondering whether there's more on this. Yeah, well, I think there were, there were the Equipoise remark and then in addition to that, there's, there's repeated mention about on this record, right? On this record, I can't make a decision, but if you're talking about the, whether my client's product qualifies as a food additive, that's a pure question of law. There's no, there's nothing that needs further development in the record. That doesn't, you wouldn't develop a record that say looked at other kinds of teas or other similar things and saw how they were treated. I guess that would, that would be a legal argument rather than a factual. Yeah, that would be, that would be a question of law as well. And so that's why I took the position that the district court seemed to, seemed to err on the side that safety was at issue on this motion. Or it said, boy, this legal question is a really tough one. I'm right on the fence and because you haven't persuaded me to tip over the fence, you haven't met your burden to show a likelihood of success. I guess that's theoretically possible, but that's, I mean, if it's a pure, again, if it's a pure question of law, there's no reason that that can't be decided at the preliminary junctions stage. And it should have been, because Congress passed the Food Additive Amendment in 1958 because processors were adding new and untested ingredients to foods to make them more appealing in terms of color, texture, shelf life, without first proving that they were safe. And so Congress said, it's not fair for the regulators to have to keep up with that, all these new things being put into food. So we're going to flip the burden and put the burden on the processors to show they're safe first. Does the district court apply a heightened standard? You have to make a clear showing of likelihood of success. Do you think that was error? I do, I think the district court did apply that. I think we could meet either standard, but I do think that was error to apply the heightened standard. And why, why was it error? Because we're only asking to restrain the city from misclassifying my client's product as a food additive when it's mixed with water. We're not asking for them to suspend the health code or to issue a new order reopening the restaurant. We're not doing any of that. We have a very narrow focus preliminary injunction and the heightened standard just doesn't apply. We call this a preliminary injunction. Am I right that you've got a trial coming up in January? That's correct. So in theory, unless that falls apart, you're going to be litigating the merits of all of these issues in a month? That's right. And is the expectation of the trial then that you're litigating both what we're calling the threshold legal issue and the safety issue? Well, we have to be prepared for both because the district court seems to signal that safety would be on the table. And so we have to be prepared for both. But I was going to say, but we do think that it's dispositive, that if my client's product is not considered a food additive, that ends the question. Can I ask about irreparable harm, recognizing the district court didn't get to it? I mean, obviously there's an intuition given the name and the like, but what do we look to in the record to see what irreparable harm you'd suffer between now and when you, assuming you prevail in trial? Right. It just seems to me, again, there's an intuition given the name, but I'm not sure what else in the record there is to know, whether you sold other products, what the damage to the brand is, all of these things that I think we would look to to establish irreparable harm. Well, I think that my client did submit an affidavit detailing the client base that they have. Point to me the details that would show irreparable harm. The details are that the city has closed down my client's establishment. And this court has held repeatedly that losing customer goodwill and loyalty is a form of irreparable harm, because that's very difficult. But I thought the harm you're arguing is not being able to reopen in the interim selling CAVA products. It is. And if we can't reopen in the interim, that's going to damage our customer loyalty and goodwill very severely. And it's difficult. What specifically in the declaration would you point to to establish that? Because my client testified the number of customers that they had per day, the rent that they're paying. I mean, all of these things are go-to. So how do I know that the number of customers per day is affected by not being able to sell CAVA? I mean, what I was thinking of when I was coming into work this morning was Shake Shack. If they can't sell shakes, they'll do just fine. And, again, maybe that's true. I presume it's true, but what in the record do I look to to see what harm your client suffers in the interim from not being able to sell CAVA? My client explained that CAVA is their main product. In the declaration. Where is that? I don't have the record site. I do believe that that is. And I also believe. I don't think that's in the declaration. Maybe I'm wrong, but I don't think so. Do they sell anything else? Does the record indicate whether they sell anything other than CAVA products? The record has some indications in the violations, but we do not have a specific product list that we've entered into the record. You haven't said it's your only product. It's not our only. It's not your only. It's certainly not our only product. It's not like you can go in there and that's the only thing that we sell. But, I mean, that is the product that the establishment is named after. Right. Shake Shack. But it's difficult to imagine that we could keep our customer voice. I don't know if I would go to Shake Shack if I couldn't get a shake. It's really difficult to imagine. My children who buy burgers from there are way too frequently with. Again, but on the context of this case, it's really difficult to imagine that my client could maintain their client base. I know, but difficult to imagine is not record proof of irreparable injury. This is the product that my client's establishment is named after. Right. How could a client go into a store named Kava Sutra, find no kava to be found anywhere, and remain loyal to that establishment? Let me ask you another question. Because they offer coffee and scones. Because your red light is on. But the FDA, right or wrong, says water is a food. They do. And the FDA says kava is a food additive. And kava is not an approved additive, and therefore food containing kava is adultery. That's what the FDA has pronounced. In light of that, how do you show likelihood of success? Well, I would disagree with one minor point there. The FDA has not said that kava is always a food additive. They say if it's used as a food additive, it's unapproved. Well, in this context where it's put into water, it is a food additive. In this context, it's not a food additive. Well, whether it is or not is a different question. But hasn't the FDA so declared? And if so, how do you prove a likelihood of success? Because you've got to show that the FDA is wrong. No, I disagree with that. The FDA has not said that kava mixed with water is a food additive. They have not said that. That's just not what the memo says. Well, okay, I have in the record is the memo from the New York Department of Health saying that the FDA says that water is food. Water, yes. And water is food, and you're putting kava into the water, and water is food. Then doesn't that make kava a food additive? No. Again, whether it is or not. But my point is you have to overcome the FDA's finding, and if that's the case, how do you show likelihood of success, much less a clear likelihood of success? But that's not what the FDA has found. I mean, we imported kava, and it was allowed in by the FDA. I mean, the city knows that. So the FDA's position is not that kava mixed with water is a food additive. And every circuit court to ever consider the matter has held that a single ingredient food combined with water does not become a food additive. That's been the law. Well, I mean, it's a matter of common sense. You know, my first reaction is food and water. Water is not necessarily food. But in this context, maybe it is. But in this context, water is just an inactive ingredient. It's designed to be a convenient delivery mechanism for the kava. That's it. That's all there is. But the statute, I don't understand under the statute how that's necessarily the meaning or likely the meaning. I mean, isn't it alters the composition? Affects the character. Affects the character. So water is food. We start with that proposition. We start with the proposition that kava is the food. Kava is a food. Water is food, right? Right.  I mean, things can, I presume, be both food and food additive? They can. So even if it's accepting that kava is food, if water is food, if you add kava to water, I mean, it changes the color, doesn't it, of the water? Sure. It changes the color. So isn't that changing, affecting a characteristic? I mean, I just don't understand how we look at this statute and know that you're likely to prevail on that point. Because it leads us into this semantic debate about whether we're adding kava to the water or water to the kava. That's not a meaningful analysis that courts can engage in. It seems very different than like the gelatinous outer, I forget the. . . The glycerin. Yeah. It seems very different than that. I mean, welcome to our world where we engage in these sorts of questions about the meaning of statutes. But whether you're adding water to kava or kava to water, how do I look at the statute and know that doesn't make kava a food additive? It just seems to fit within the meaning of a quite broadly worded statute. Under that reasoning, Treko and Oakmont would have been decided differently. And then adding water to any food would turn a food into a food additive. And that would blur the distinction between food and food additives that Congress intended. Are there. . . And I would say that teas are treated as a single ingredient food. There are instances in the regulations where the FDA indicates that a single ingredient tea can be used as a food or a food additive. And that's because adding water doesn't change the characteristics. So tea can be a food additive. If you're adding it to some other food. It all depends on the intended use. And in this case, we have just a single ingredient food mixed with water. If it turns on intended use and maybe what changes the character or affects the character. . .  Maybe that is an evidentiary question and not a legal question. Well, it's not because the city even concedes that all my client does is sell kava suspended in water. That's it. And the city also concedes that if my client had sold kava in a tea bag to their clients and handed to them, no violation. We take that same product, put it in water, and hand it to the clients. Violation and a public health emergency. I mean, that's the city's position. And I would say that actions speak louder than words. If the city and the FDA truly believed that kava was dangerous, they would have banned it as a single ingredient food. They haven't done that. That's because they can't. That's because it's not dangerous and they can't prove it. Is there a way to consume kava or a way that it is consumed other than suspended in water? That is the traditional use. I don't know if there are theoretically other ways to do it. But that is typically how it's used and how it's been used for thousands of years. And that lends itself to, you know, supports the notion that this is just a single ingredient food. And the city is... Right. I'm thinking about the blackcurrant analogy and I'm thinking about, like, blackcurrant oil is kind of a thing in itself. Like, you can have a jar of it and have a spoonful of it. So the packaging in the gelatinous substance or whatever doesn't change the character. But here, there's not... You're not consuming kava other than when it's put into the water. I believe that's the case. And if that's true, then what the city is doing is using the food additive provision to ban a single ingredient food. That's not what it's for. If the city wanted to do that and the FDA wanted to do that, why don't they just ban it as a single ingredient food? They can't. So they're using this as a shortcut to ban it as a single ingredient food. And that's improper. Clearly, under the case law and under the purpose of the food additive amendment and the plain text. Well, we've kept you away over time. I'm sorry about that. We'll hear from Mr. Young. Good afternoon, Your Honors. May it please the Court, Philip Young here on behalf of the city. I think Your Honors really hit the nail on the head here at the preliminary injunction stage with an incomplete record, a trial coming up in a month. The fact that the FDA has determined that kava, when used as an ingredient in conventional foods, which is when mixed with water or when mixed with coconut milk, as their guidance says, is a food additive. So can you help me and maybe point me to the record on this? Saying that the FDA says that water is food. Doesn't necessarily compel the conclusion that kava is a food additive when it's put in there. Has the FDA made that second leap that you're just describing? You say the FDA has said kava is a food additive when put in water. Have they said that? So I would say not explicitly in the text of that guidance, but functionally that is what the guidance says. Okay, that's the inference that we should draw from that. That is as clear an inference as you could draw. On page 160, they say kava is an unapproved food additive, 160 of the record, when used as an ingredient in conventional foods. As Judge Chin noted, water is a food. Earlier in that same memo, page 141 of the record, they describe how kava is consumed. It's mixed with either water or it's mixed with coconut milk. The natural inference to draw from that is the FDA believed that conventional foods like water and coconut milk, when kava is mixed into them, kava becomes an unapproved food additive. This is a really dumb question, but I have a box of kava tea up in my chambers. Is that different from the product we're talking about here? Like, I mean, it's sold at the grocery store. I bought it. There's no warnings on it. Is that? I don't know the answer to that for certain. My understanding is that kava can be sold as a dietary supplement, and in that context, assuming that the seller follows all of the FDA regulations governing the labeling of a dietary supplement, it could be sold that way. I don't know if that means that it could be sold in a teabag. There's nothing in the record about that. I see. And in the context of this case, I know that that was sort of a side argument about the dietary supplement. Is there an argument still on the table that in the context of Kavasutra's services, it's a dietary supplement and is permissible in that framework? No, I don't think that argument is here anymore. I think Kavasutra clearly said in the district court that they are not selling kava as a dietary supplement. They're selling it as a substance mixed with water and then sold to customers. Is there a limiting principle under the statute that would make it so that anything added to water doesn't become a food additive? Sure. So there are two limiting principles, I would say. One is that the substance has to be not generally recognized as safe. If the substance is generally recognized as safe, then it's not going to be a food additive even if it's mixed with water. And then, two, there's the— Well, I thought that—but that assumes the burden, doesn't it, on the—in this case, the appellants? In other words— Correct. If this is a substance that is not generally recognized as safe, then yes, the seller would have the burden to prove that that substance is, in fact, generally recognized as safe. And then the other limitation is affects the characteristics of, which other courts of appeal have described as basically has to be— there has to be an intent in adding a food additive to stimulate some type of change in the food's characteristics. So that would be the other limitation. And how do we know that that is the case here? I think you know that's the case here based on Kavasutra's own description of the product that they sell. They take the kava powder, they mix it with water, they run it through a filter, and it creates this water-based suspension that changes the characteristics of the water. It's no longer water. It's now a drink, a tea-like beverage that you consume. But, yes, isn't that going to be true? This might be a chemistry question, but isn't that going to be true for any food that you add to water? I don't know that that's necessarily the case. I think, as Your Honor noted, it may be a factual question that requires more development of the record to determine what exactly constitutes affecting the characteristics. But, ultimately, this Court doesn't have to deal with that question and go into the nitty-gritty of exactly how this statute applies in different contexts. We're at a preliminary injunction stage. As you noted, the district court said that both parties made colorable arguments about the way to interpret the definition of food additive. And, on that basis alone, Kavasutra cannot satisfy its burden to show clear and substantial likelihood of success on the merits here. Was the black currant oil decision wrong? No, I don't think that decision was wrong, Your Honor. But, in that case, you're combining these substances for purposes of delivering them in a different form. Why isn't that? I guess I'm just still trying to understand the distinction between using water as the vehicle for delivery and using a gelatinous capsule as the vehicle for delivery. Sure. So, the gelatinous capsule, the purpose of that was not to affect the characteristics of the black currant oil. It was to act as a container. It was to protect it from rancidity. And that was it. Here, the entire purpose of adding Kavasutra to water is to create this new tea-like beverage. So, that's the same in the blue-green algae case that they cite. It's a glycerin capsule, and inside is blue-green algae. The purpose of the capsule is not to change the character, or the purpose of the blue-green algae is not to change the characteristics of the capsule. This feels very metaphysical to me. And, just finally, briefly, on the reparable harm point, it's at page 23 to 24 of the record, which is the Klein Affidavit. That's the only evidence of irreparable harm on this preliminary injunction record. And all he says is, here's the monthly rent of my stores, and the city has closed my stores, and I am going to lose income, and I am not going to be able to pay rent as a result of that. He says nothing about Kava being the only product he sells. Doesn't tell us what other products the stores sell. Doesn't say that he would be unable to continue operating the stores if he didn't sell this Kava Sutra. It was his burden to come forward with evidence of irreparable harm. You know, I mean, it's interesting, the irreparable harm question. Normally, we're reviewing the district court's analysis of the evidence as it relates to irreparable harm, and that's one of the important factors in the preliminary injunction determination. But here, the district court decided not to look at the question. What do we do with that? How do we treat that omission in our review of the district court's decision? I think Your Honor can follow it and resolve this case solely based on likelihood of success on the merits and balance of the equities. I think this court has the discretion to affirm on the alternative ground that— The omission is even assuming there is irreparable harm. We still win because of the other prongs. That's correct, Your Honor. By the way, they do allege more. They allege not only being unable to pay the rent, continuing to employ their employees. They'll lose their customer base. So they do argue a little bit more than simply losing money. Yes, the affidavit says all of those things, Your Honor. But again, what it doesn't say is the types of products that Kava Sutra sells and whether the unavailability of Kava would essentially prevent them from operating and would cause them to lose customers as a result. If the court has no further questions, we'd ask you to affirm the district court. Thank you, Your Honor.  So the city conceded that essentially the burden will always be on the seller to show that something is safe because anytime you add even water to a food, now that food becomes a food additive and the burden is on the seller. That was never Congress's intention, and that's not how the law has worked for decades. That is a fundamentally radical interpretation of federal law. Secondly, I would say that the Kava tea is no different from what my client sells. That is what my client sells, Kava tea. And according to the city, that is now dangerous when mixed with water. In the blue algae case that the city mentioned, the FDA's position was, well, you're taking that blue algae and it's designed to be taken with water, and therefore adding it to water makes it a food additive, and the district court disagreed with that. And no court has ever held that adding food to water makes that food a food additive. That fundamentally turns Congress's system on its head. And as to irreparable harm, you know, this court has said that, and our affirmation from my client does say that they won't be able to pay rent without the injunction and won't be able to. So that by itself, this court has repeatedly said that not being able to operate your business is enough to establish irreparable harm. And I think in this case it's clear that customer loyalty and goodwill would be absolutely destroyed. I guess the link people are questioning is the link between suspending Kava sales and not being able to operate the business. And I guess the inference we're to draw from the affidavit is because we can't sell Kava, we can't run our business, and all these harms follow. But there's not a place where that inference, which may be perfectly reasonable, but is laid out. I think it's the only inference that you can draw from that affirmation. There is no other reasonable inference you can draw from that affirmation, especially when the name of my client's establishment is Kava Sutra. How could a client remain loyal if they go in and find only coffee and scones and no Kava? The irreparable harm here is extremely damaging. And again, with regard to the balancing of the hardship and the public interest, because I didn't get a chance to address that, the irreparable harm absence of any finding of that by the district court affects that analysis because the court should have balanced that against the city's interest and come up with the public interest. But the district court couldn't have done that because it didn't make any irreparable harm findings. And again, even if you assume irreparable harm, that finding by the district court was still error because, again, we're not asking for a very broad preliminary injunction here. We just want to restrict the city from misclassifying Kava as a food additive when it's mixed with water. Are any of the stores operating? No, they're not. They're completely closed. There seemed like there was some... Today at this district, they're totally closed. That is irreparable harm. We are completely closed. There is no way that we can maintain customer loyalty and goodwill. Stores are absolutely closed. And I've just... I think your time's up. It is. And I just want to point out that that customer loyalty and goodwill is something that my clients may never get back while the store is closed. Thank you. Thank you. All right. Thank you both for your arguments. Well argued. We will take it under advisement.